IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DERRON W. SMITH-JOHNSON,

Petitioner,

v.

Case No. 3:23-CV-03914-NJR

UNITED STATES OF AMERICA,

Respondent.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on Derron W. Smith-Johnson's motion to vacate his conviction and sentence under 28 U.S.C. § 2255. (Doc. 1). Smith-Johnson contends that he received ineffective assistance from his trial counsel in violation of his Sixth Amendment rights. For the reasons set forth below, the Court finds that two of Smith-Johnson's claims lack merit, but an evidentiary hearing is necessary to address one of his claims.

BACKGROUND

In April 2022, Smith-Johnson was charged with possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) and with unlawfully possessing a machinegun in violation of 18 U.S.C. § 922(o). *See United States v. Smith-Johnson*, No. 3:22-30045-NJR (S.D. Ill.), Doc. 16 ("Criminal Case"). He was represented by attorney Todd Schultz of the Federal Public Defender's office.

On September 20, 2022, Smith-Johnson appeared before the Court for a change of plea hearing and was placed under oath. (Criminal Case, Doc. 59 p. 2). The undersigned

Page 1 of 19

first asked Smith-Johnson questions relevant to determining his competency and ability to understand the proceedings. Smith-Johnson represented that he could read and write and denied being under the influence of any drugs or medications. (*Id.* at p. 4) Neither the Government nor Smith-Johnson's attorney had concerns about his competency, and the Court found that he was capable of entering a knowing plea. (*Id.* at pp. 4-5).

The undersigned then explained to Smith-Johnson the rights he was waiving by pleading guilty. (*Id.* at pp. 5-8). Smith-Johnson affirmed that he wished to give up those rights. (*Id.*). After the Government explained the elements of the charges, the undersigned reminded Smith-Johnson of the possible penalties for the offenses. (*Id.* at pp. 9-12). Smith-Johnson affirmed that he understood. (*Id.*). The undersigned then reviewed several provisions of Smith-Johnson's plea agreement, including the portion stating that he would not recommend a sentence of less than 92 months, and the Government would recommend a total sentence of 120 months. (*Id.* at p. 13). The parties reached these figures based on their preliminary advisory Guidelines calculation, which suggested that Smith-Johnson's base offense level was 22, under U.S.S.G. § 2K2.1(a)(3) and that an enhancement under § 2K2.1(b)(6)(B) applied because the offense had been committed "in connection with another felony offense (an automatic weapon switch)." (Criminal Case, Doc. 32, p. 4).[1]

The undersigned emphasized that the parties' recommendations were not binding on the Court. (Criminal Case, Doc. 59, p. 13). The Court also explained that Smith-Johnson

---

[1] The parties also determined that Smith-Johnson was in Criminal History Category VI and would be entitled to a three-level reduction for his acceptance of responsibility, U.S.S.G. § 3E1.1.

would still be bound by the plea agreement if the Court calculated a Sentencing Guidelines range that differed from what he had anticipated. (*Id.* at p. 17).

The undersigned also informed Smith-Johnson that the plea agreement included a waiver restricting his ability "to seek modification of, or contest any aspect of, the conviction or sentence, in any type of proceedings." (*Id.* at p. 14). However, Smith-Johnson did not waive his right to argue on appeal or in a collateral proceeding that he had received ineffective assistance of counsel. (Criminal Case, Doc. 32, p. 10). Smith-Johnson confirmed that he understood the waiver. (Criminal Case, Doc. 59, pp. 14-15).

The undersigned next addressed the voluntariness of Smith-Johnson's plea. He denied that anyone had pressured him or forced him to plead guilty. (*Id.* at p. 12). He also confirmed that no one had made any prediction or promise regarding what his sentence would be. (*Id.* at p. 16). During the hearing, Smith-Johnson stated that he was fully satisfied with Schultz's representation and advice during the case. (*Id.* at pp. 8-9). He made a similar statement in his plea agreement, which he affirmed that he had read and reviewed with counsel. (*Id.* at pp. 12-13; Criminal Case, Doc. 32, p. 14). Finding Smith-Johnson's guilty plea knowing and voluntary, the undersigned accepted his plea. (Criminal Case, Doc. 59, p. 21).

Following Smith-Johnson's guilty plea, the United States Probation Office prepared an initial presentence report ("PSR"), which tracked the parties' anticipated Guideline calculation and produced an imprisonment range of 92-115 months. (Criminal Case, Doc. 36). On January 10, 2023, Smith-Johnson appeared before the Court for sentencing. Smith-Johnson confirmed that he had read and discussed the PSR with his

attorney and stated that everything in the report was true. (Criminal Case, Doc. 61, p. 3). The Court sentenced Smith-Johnson to a prison term of 104 months, followed by three years of supervised release. (Criminal Case, Doc. 45).

At the conclusion of the hearing, the undersigned reminded Smith-Johnson of his right to appeal his conviction subject to the waiver provisions of his plea agreement:

> Mr. Smith-Johnson, you can appeal your conviction if you believe that your guilty plea was somehow unlawful or involuntary or if there was some other fundamental defect in the proceedings that was not waived by your guilty plea.

> In addition, under some circumstances a Defendant has the right to appeal the sentence imposed; however, a Defendant may waive those rights as part of a plea agreement. You have entered into a plea agreement which waives some or all of your rights to appeal the sentence itself. Those waivers are generally enforceable, but if you believe the waiver itself is not valid you can present that theory to the Court of Appeals. With few exceptions, any notice of appeal must be filed within 14 days of judgment being entered in your case or within 14 days of the Government filing a notice of appeal. I expect I will enter judgment later today or tomorrow at the latest.

(Criminal Case, Doc. 61, pp. 24-25).

Smith-Johnson confirmed that he understood his appellate rights as explained by the Court. (*Id.* at p. 25). The Court entered judgment on January 18, 2023. He did not file a notice of appeal.

Approximately eleven months later, Smith-Johnson moved for a reduction in his sentence pursuant to Amendment 821 to the Sentencing Guidelines. (Criminal Case, Doc. 53). The Government did not oppose the motion and agreed that his newly applicable Guideline range was 84 to 105 months. The Court granted Smith-Johnson's motion and reduced his prison term to 95 months. (Criminal Case, Doc. 56).

Page 4 of 19

Smith-Johnson also moved to vacate his conviction and sentence under section 2255. He alleges that his counsel performed deficiently in three respects: (1) failing to appeal his sentence despite his express request, (2) failing to obtain a plea agreement that "included equitable terms," and (3) failing to challenge to the application of the sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B). Smith-Johnson attached to his motion a document he allegedly sent to Schultz regarding an appeal. The letter is dated January 15, 2023, and reads as follows:

> Dear Todd [Schultz],
>
> I'm writing in regards to my sentence. I'm asking you to file a notice of appeal on my behalf. I have a hard time accepting that I was charged with a machine gun and enhance [sic] 4 level for a switch that actually made the gun a machine gun.
>
> Thank you for your time and concern in this matter.

(Doc. 1 p. 19).

Upon preliminary review, the Court ordered the Government to file a response. (Doc. 4). The Government attached to its response an unsworn declaration from Schultz. (Doc. 11-6). Smith-Johnson subsequently filed an undated document titled "Affidavit of Facts." (Doc. 13, p. 4). After observing that both Schultz's declaration and Smith-Johnson's submission did not comply with 28 U.S.C. § 1746, the Court issued an order authorizing the parties to file supplemental declarations. (Doc. 14). The Court mailed a copy of its order to the address for Smith-Johnson listed on his § 2255 motion and at FCI Greenville, where he presently is incarcerated. *See* BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last visited May 7, 2026). The Court extended the

deadline for supplemental submissions to April 1, 2026. (Doc. 16). On April 15, 2026, the Court mailed a copy of its order extending the deadline to Smith-Johnson at FCI Greenville after noting that the order may have been sent only to his prior address. To date, he has not filed any additional materials.

For its part, the Government filed a revised declaration from attorney Schultz. (Doc. 17). Schultz avers that he advised Smith-Johnson that if he was convicted, the Court could order his sentences on each count to run consecutively and that the Government was going to ask for an above-guideline sentence. This effectively meant that his potential maximum sentence was 240 months. (*Id.* at ¶ 1). Schultz also shared with Smith-Johnson the possibility, based on his review of discovery materials, that a cross-reference under U.S.S.G. § 2A1.1 might apply, further increasing his guideline range. In the event the cross-reference did not apply, Schultz believed the evidence would support a four-point enhancement for possessing a firearm in connection with another felony offense. (*Id.*).

Schultz also states that Smith-Johnson never asked him to file a notice of appeal. (*Id.* ¶ 6). Schultz notes that after Smith-Johnson was sentenced, he called the Federal Public Defender's Office multiple times seeking copies of case-related documents. He did not mention an appeal during those phone calls. (*Id.* ¶ 8). His office has never received any correspondence from Smith-Johnson regarding an appeal. (*Id.* ¶ 7).

### LEGAL STANDARD

Section 2255 of Title 28 of the United States Code provides a federal prisoner with a post-conviction remedy to test the legality of their detention "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States."

28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006)). Thus, it "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

## DISCUSSION

Smith-Johnson contends that he is entitled to relief because his trial counsel was ineffective in several respects. First, he alleges that his attorney failed to file a timely notice of appeal despite his express request. Second, he faults his attorney for failing to secure a plea agreement "that included equitable terms." (Doc. 1 p. 17). Finally, he alleges his attorney performed deficiently by failing to argue that applying the sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B) violated his right to due process. The Government argues that each point fails on the merits.

### A. Ineffective Assistance

The Sixth Amendment guarantees criminal defendants the right to counsel. U.S. Const. amend. VI. And "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prevail on an ineffective assistance claim, a petitioner is required to "meet the familiar two-part standard set forth in *Strickland*." *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (citing *Strickland v.*

*Washington*, 466 U.S. 668, 688 (1984)). The petitioner must show that his counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness'" and his counsel's deficient performance prejudiced him. *Id.* at 532 (quoting *Strickland*, 466 U.S. at 688). In assessing whether an attorney's performance was deficient, a court's review is deferential, and a prisoner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound [] strategy." *Pierce v. Vanihel*, 93 F.4th 1036, 1048 (7th Cir. 2024) (quoting *Mosley v. Atchison*, 689 F.3d 838, 847-48 (7th Cir. 2012)). To establish prejudice, there must be a reasonable probability that, but for the deficient performance, the result of the proceeding would be different. *Strickland*, 466 U.S. at 694.

A court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Moreover, where a claim of ineffective assistance fails on one prong, the court need not address the other prong insofar as the failure to satisfy either prong is fatal to the claim. *See Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

*B.*

*i.*

Smith-Johnson first argues that his attorney's failure to file a notice of appeal constitutes ineffective assistance. It is well-settled that the failure of a lawyer to comply with a defendant's request to file a direct appeal "is per se ineffective assistance of counsel," and a petitioner need not show prejudice in order to prevail on the ineffectiveness claim. *Gant v. United States,* 627 F.3d 677, 681 (7th Cir. 2010). "When a

defendant in a criminal case specifically instructs a lawyer to file a notice of appeal, the lawyer's failure to do so deprives the defendant of the Sixth Amendment right to counsel, regardless of whether an appeal was likely to succeed." *Ryan v. United States*, 657 F.3d 604, 606 (7th Cir. 2011); *see also Roe v. Flores-Ortega,* 528 U.S. 470, 484 (2000); *Castellanos v. United States,* 26 F.3d 717, 719 (7th Cir. 1994) ("[F]ailure to take an appeal, despite the defendant's request, is ineffective assistance without regard to the probability of success on appeal."). If a court concludes that a defendant is entitled to relief on such a claim, it must enter a new judgment in the underlying criminal case to permit the defendant to take an appeal. *United States v. Bell*, 826 F.3d 378, 380 (7th Cir. 2016).

The Government rightly concedes these principles but argues that Smith-Johnson's allegation he directed Schultz to file an appeal is wholly unsubstantiated, so no hearing is necessary to resolve the claim.

It is true that "[a] district court need not grant an evidentiary hearing in all § 2255 cases." *Bruce v. United States*, 256 F.3d 592, 597 (7th Cir. 2001); *accord Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002). For example, a hearing is not required when "the files and records of the case conclusively show that the prisoner is entitled to no relief." *Lafuente v. United States*, 617 F.3d 944, 946 (7th Cir. 2010) (quoting 28 U.S.C. § 2255(b)). A hearing is also not necessary if the petitioner's allegations are "palpably incredible" or "inherently unreliable." *Bruce*, 256 F.3d at 597 (citing *Machibroda v. United States*, 368 U.S. 487, 495 (1962)); *Barker v. United States*, 7 F.3d 629, 636 n.3 (7th Cir. 1993) (quoting *United States v. Trussel,* 961 F.2d 685, 689 (7th Cir. 1992)). A hearing must be granted, however, if the petitioner "alleges facts that, if true, would entitle him to relief."

*Lafuente*, 617 F.3d at 946. And the Seventh Circuit has counseled that a "petitioner's burden for receiving an evidentiary hearing is relatively light." *Torres-Chavez v. United States*, 828 F.3d 582, 586 (7th Cir. 2016). Thus, the question for the Court is whether the facts supporting Smith-Johnson's allegation of ineffective assistance, as set forth in his motion, constitute sufficient evidence to make his allegation plausible and to warrant further inquiry. *Ryan*, 657 F.3d at 606; *Lafuente*, 617 F.3d at 946.

The Government observes that Smith-Johnson did not furnish an affidavit to support his claim that he directed Schultz to file a notice of appeal. Smith-Johnson did attach to his reply brief a document purporting to be an affidavit attesting to his version of events. (Doc. 13, p. 4). However, there are problems with this submission.

The document is "not literally an 'affidavit' because [Smith-Johnson] did not swear to the content in the presence of someone authorized to administer oaths." *Owens v. Hinsley*, 635 F.3d 950, 954 (7th Cir. 2011). Nevertheless, if Smith-Johnson complied with the requirements of Section 1746 of Title 28 in preparing the document, it could be considered as evidence in support of his claim. *Id.*; *McDaniel v. Syed*, 115 F.4th 805, 814 (7th Cir. 2024). That statute prescribes the manner of providing evidence in an unsworn declaration. To qualify, a document must contain a statement substantially in the following form: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date)." 28 U.S.C. § 1746.

Yet Smith-Johnson's submission does not satisfy § 1746. To start, he did not date his filing. Courts have explained that a missing date is not a mere technical problem, for "[w]ithout the date of execution, the court cannot tell when the declarations were made,"

Page 10 of 19

significantly diminishing the declaration's persuasive value. *Grayer v. Cerda*, No. 12-2665, 2014 WL 6713480, at *10 (N.D. Ill. Oct. 6, 2014). For that reason, courts regularly strike or refuse to consider undated declarations. *See Kalra v. United States*, No. 12-3154, 2013 WL 1749385, at *3 (N.D. Ill. Apr. 23, 2013); *Rubicon Real Est. Holdings, LLC v. City of Pontiac*, 791 F. Supp. 3d 761, 785 (E.D. Mich. 2025). To be sure, some courts hold that the requirement may be overlooked when extrinsic evidence indicates an approximate date of signing. *See Dobosz v. Quaker Chem. Corp.*, No. 15-203, 2016 WL 4376528, at *3 (N.D. Ind. Aug. 16, 2016) (collecting cases); *United States v. Kolbusz*, No. 12-782, 2023 WL 2161661, at *7 (N.D. Ill. Feb. 22, 2023).

But Smith-Johnson's filing contains yet another problem — it does not contain any indication that he understood his statements were made under penalty of perjury, another requirement of § 1746. *See DeBruyne v. Equitable Life Assur. Soc. of U.S.*, 920 F.2d 457, 471 (7th Cir. 1990) (noting that a document that did not subject the affiant to the penalty of perjury "was not within the range of evidence that the district court could consider"); *Raul Vasquez, v. City of Chicago*, No. 19-6014, 2024 WL 6984751, at *1 (N.D. Ill. Feb. 12, 2024) (excluding a purported affidavit that did not subject the signor to penalty of perjury); *Barker v. Quick Test, Inc.*, No. 13-4369, 2016 WL 1019708, at *2 (N.D. Ill. Mar. 15, 2016) (similar). The document only attests that it is true "to the best of [Smith-Johnson's] knowledge, wisdom, and understanding." (Doc. 13, p. 4). "[C]ompliance with 28 U.S.C. § 1746 is mandatory and fundamental, not a 'non-substantive' requirement." *Knights v. Williams*, No. 02-5017, 2005 WL 1838427, at *3 (N.D. Ill. July 28, 2005). The Court warned Smith-Johnson about these issues and permitted him to file a supplemental

declaration to address them. He has not filed any additional materials. The Court therefore will not consider the document.

Thus, Smith-Johnson is left only with the allegations in his petition and the letter he attached to it. *Cf. Kafo v. United States*, 467 F.3d 1063, 1070 (7th Cir. 2006) (concluding that a habeas petitioner's statements under oath in his § 2255 motion would "have constituted at least some evidence of his allegations with respect to his counsel's alleged failure to file a direct appeal after being requested to do so."). Smith-Johnson's motion offers few details about his claim: he relays only that his "[c]ounselor fail[ed] to file [a] notice of appeal after movant specifically requested him to do such." (Doc. 1, p. 4). The motion then refers to "Exhibit A," which appears to be an unsigned letter to Schultz, requesting that he file an appeal. (Doc. 1, p. 13). The letter is dated January 15, 2023, but includes no markings indicating that it ever was sent. At the bottom, the words "Exhibit A After Copy" appear in brackets. (*Id.*).

Based on the totality of the record, the Court agrees with the Government that no hearing is necessary to resolve this claim. Petitioner's allegation that he directed Schultz to file an appeal is conclusory and non-specific. He does not offer any supporting details that would lend credence to his account, such as when or how he told Schultz he wished to appeal.

The somewhat mysterious letter he attached to the § 2255 motion does not help his case. The Court is unsure whether Smith-Johnson takes the position that the document is the actual letter he allegedly sent to Schultz or a copy of such a letter. The latter seems more probable, as the letter includes the phrase "After Copy," and it does not bear a post-

mark. It also is not clear how he could come to possess a letter that had been sent. If the document *is* a copy, Smith-Johnson never indicates whether he created it contemporaneously with the original or, more likely, whether he attempted to reproduce a copy from memory at some point later. Curiously, the letter is unsigned.

More problematic is the fact that the letter is not referenced directly in the § 2255 motion. Had Smith-Johnson attested under penalty of perjury that the document was a copy of a letter he had mailed to Schultz, it would be of some probative value. Here, however, the document was simply appended to the motion and was left entirely unexplained. The Court therefore finds that it is entitled to little, if any, weight as evidence.

In contrast to Smith-Johnson's unadorned, one-sentence account, Schultz's version of events is more specific. He recalled that Smith-Johnson contacted his office by telephone on multiple occasions after he was sentenced, seeking copies of case-related documents. Yet in all of these calls, Smith-Johnson never mentioned an appeal or requested that Schultz file one on his behalf. (Doc. 17 ¶ 8). Schultz further declared that his office never received any mail from Smith-Johnson requesting that an appeal be filed. (*Id.* ¶ 8). When compared, Schultz's detailed account refutes any suggestion that Smith-Johnson requested him to file an appeal on his behalf. *See Gant v. United States*, 627 F.3d 677, 681 (7th Cir. 2010) (explaining that for a defendant to succeed on a claim that he asked his attorney to pursue a direct appeal and the attorney did not do so, "a defendant must show that he actually requested his attorney file an appeal."); *Castellanos v. United*

*States,* 26 F.3d 717, 719 (7th Cir. 1994) ("'Request' is an important ingredient in this formula. A lawyer need not appeal unless the client wants to pursue that avenue.").

To be sure, if Smith-Johnson had offered *any* more details about his version of events, the Court would be inclined to permit further development of the claim at an evidentiary hearing. At this point, however, the Court is left to compare Smith-Johnson's vague allegation with Schultz's more definite account. Despite the invitation extended by the Court to file a new declaration, Smith-Johnson has not done so. Under the circumstances, the record affirmatively demonstrates that Smith-Johnson is not entitled to relief on his claim and there is no need to explore it further at an evidentiary hearing.

ii.

Smith-Johnson next claims that Schultz rendered ineffective assistance by failing to obtain a plea agreement with "equitable terms." (Doc. 1, p. 17). The Government counters that this claim is too vague and that Schultz explained in his affidavit why he believed the plea agreement benefited Smith-Johnson.

The Court agrees with the Government. "[T]he Sixth Amendment right to effective assistance of counsel extends to assistance rendered when deciding whether to reject a plea offer." *Almonacid*, 476 F.3d at 521. In the plea context, "we do not ask whether, had he gone to trial, the result of that trial would have been different than the result of the plea bargain." *Lee v. United States*, 582 U.S. 357, 364 (2017) (internal quotation marks omitted). Instead, we consider whether the defendant has demonstrated a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

have insisted on going to trial." *Id.* at 364-65 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)).

Here, however, Smith-Johnson has not even articulated what error he believes his counsel committed. His statement that the plea agreement was inequitable lacks specificity. *United States v. Herrera-Rivera*, 25 F.3d 491, 497 (7th Cir. 1994) ("Vague or general allegations are insufficient to satisfy the first prong of the *Strickland* test."). Smith-Johnson's omission is all the more noteworthy considering his statements under oath during the plea hearing that he understood the essential terms of his plea agreement and was satisfied with his counsel's performance. (Criminal Case, Doc. 59, p. 15). He has offered no basis "to override the verity that presumptively attaches to a defendant's statements when entering a guilty plea." *Hutchings v. United States*, 618 F.3d 693, 699 (7th Cir. 2010) (citing *United States v. Loutos*, 383 F.3d 615, 619 (7th Cir. 2010)). Smith-Johnson therefore has not established a right to relief on this ground either.

iii.

Smith-Johnson's final claim presents a more difficult question. He argues that his attorney should have objected to the § 2K2.1(b)(6)(B) enhancement to his Guideline range under the Fifth Amendment's Due Process clause. At the time he was sentenced, that provision recommended a four-level increase if the defendant "used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense . . . ." U.S.S.G.

§ 2K2.1(b)(6)(B) (U.S. Sent'g Comm'n 2021).[2] The Court and Probation Department determined that the enhancement was appropriate because Smith-Johnson possessed the firearm in connection with the felony offense of possessing a machinegun. (Criminal Case, Doc. 36 ¶ 25). No party objected. Indeed, the parties conceded in the Plea Agreement that the enhancement applied. (Criminal Case, Doc. 32, p. 4).

The Government observes that Smith-Johnson informed the Court during the sentencing hearing that he was satisfied with the PSR's calculation of his Guideline range. (Criminal Case, Doc. 61, p. 3). More specifically, he affirmed that he had read the report, reviewed it with counsel, and that everything in the report was true. (*Id.*). But the Government does not explain why these statements preclude Smith-Johnson from arguing, as he does now, that he received ineffective assistance in connection with a potential *legal* error in his sentence, as opposed to some factual matter. The Government further argues that Schultz discussed potential Guideline provisions with Smith-Johnson and included the § 2K2.1(b)(6)(B) enhancement in the plea agreement because the parties agreed that it "indisputably applied." (Doc. 8, p. 15). But as explained below, the Court believes the question requires additional consideration.

Smith-Johnson challenges the enhancement under the due process clause, but the Court appears the core of his challenge to be that the enhancement was erroneous under the facts of his case.[3] It is well settled that an attorney's "unreasonable failure to identify

---

[2] This enhancement is now codified at § 2K2.1(b)(7)(B).

[3] The Government describes Smith-Johnson's arguments as "conclusory" and notes that he does not describe the theory under which his attorney should have challenged the enhancement. (Doc. 8, p. 15). The Court disagrees. Smith-Johnson clearly argues that an enhancement under § 2K2.1(b)(6)(B) due to his possession of the switch was erroneous in light of his conviction for the same conduct. (Doc. 1, p. 6).

and bring to a court's attention an error in the court's Guidelines calculations that results in a longer sentence may constitute ineffective assistance entitling the defendant to relief." *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011); *see also Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015) ("An attorney's failure to object to an error in the court's guidelines calculation that results in a longer sentence for the defendant can demonstrate constitutionally ineffective performance.")

The Court believes that this claim merits further exploration. An enhancement under § 2K2.1(b)(6)(B) is appropriate "when a preponderance of the evidence connects the defendant's use or possession of a firearm to another felony offense, even if the defendant was neither charged for nor convicted of the second crime." *United States v. Ingram*, 40 F.4th 791, 794 (7th Cir. 2022). This test is "satisfied only when the firearm 'had some purpose or effect in relation to' another felony." *Id.* (quoting *United States v. LePage*, 477 F.3d 485, 489 (7th Cir. 2007)). For further guidance, the Sentencing Commission has explained that the enhancement applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense . . . ." U.S. Sent'g Guidelines Manual § 2K2.1 cmt. n. 14(A) (U.S. Sent'g Comm'n 2021). "[A]nother felony offense," in turn, is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* App. N. 14(C). As the Seventh Circuit has explained, this definition excludes "the

---

Mindful that *pro se* litigants are entitled to a liberal construction of their legal theories, *see White v. City of Chicago*, No. 14-3720, 2016 WL 4270152, at *13 (N.D. Ill. Aug. 15, 2016), the Court finds that Smith-Johnson's core claim is sufficiently articulated.

possession or trafficking offense that serves as the basis for the defendant's conviction." *United States v. Jackson*, 741 F.3d 861, 863 (7th Cir. 2014) (citing *United States v. Juarez*, 626 F.3d 246, 255 (5th Cir. 2010)).

Here, the PSR and Plea Agreement both stated that the other offense supporting the enhancement here was Smith-Johnson's possession of a firearm equipped with an automatic weapon switch. (Criminal Case, Doc. 36 ¶ 25; Doc. 32, p. 4). This assumption likely should have merited further inquiry. As noted above, the Guidelines clarify that the firearm must have *facilitated* another felony offense. Here, that requirement leads to the somewhat recursive scenario whereby Smith-Johnson's firearm — a Glock 23, 40 caliber pistol — "facilitated" his possession of the very same firearm equipped with a switch. It is likely for that reason that the Guidelines' commentary states that the *other* offense cannot be "*the* explosive or firearms possession or trafficking offense." U.S. Sent'g Guidelines Manual § 2K2.1 App. N. 14(A) (U.S. Sent'g Comm'n 2021) (emphasis added). Were it otherwise, it would appear that the enhancement could apply in *every* prosecution where a defendant is convicted of being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1), and that firearm is a machinegun, § 922(o).

To be clear, the Court does not conclude definitively that applying the enhancement was error or that Schultz's failure to object to it constitutes deficient performance, but further exploration is warranted, and the appointment of counsel for Smith-Johnson will assist in the resolution of the issue. The Court has located little caselaw addressing whether it is proper to apply the enhancement in the circumstances of this case. It also is possible that Schultz's failure to object to the enhancement here was

based on a strategic assessment of the case. In his declaration, he explains his concern that a cross-reference to U.S.S.G. § 2A1.1 might apply, drastically increasing the guideline range. (Doc. 17, p. 2). And even if Schultz's performance fell below constitutional standards, it is not obvious that Smith-Johnson will be able to demonstrate prejudice. The Government emphasized in its Sentencing Memorandum that the pistol in this case "was linked through ballistics comparisons" and certain video evidence to several other shootings and a potential homicide. (Criminal Case, Doc. 37, p. 2). It is possible that some other felony offense would have supported the enhancement. The Court cannot say for sure because the Government never furnished any evidence of those other offenses at sentencing. *LePage*, 477 F.3d at 489 ("In order to enhance the sentence for possessing the gun in connection with another felony, the court must find that the gun had some purpose or effect in relation to that second crime."). An evidentiary hearing is necessary to explore these questions after counsel has been appointed.

## CONCLUSION

For the reasons stated above, Smith-Johnson's first and second ineffective assistance claims are **DENIED,** but a hearing is necessary to address his remaining claim. The Court will appoint counsel to represent Smith-Johnson under the Criminal Justice Act and will schedule the hearing and set pre-hearing deadlines by separate order.

**IT IS SO ORDERED.**

**DATED:   May 7, 2026**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**