**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**DERRON W. SMITH-JOHNSON,**

**Petitioner,**

**v.**

**UNITED STATES OF AMERICA,**

**Respondent.**

**Case No. 3:23-CV-03914-NJR**

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on Derron W. Smith-Johnson's motion to vacate his conviction and sentence under 28 U.S.C. § 2255. (Doc. 1). Smith-Johnson contends that he received ineffective assistance from his trial counsel in violation of his Sixth Amendment rights. For the reasons set forth below, the motion is denied.

## Background

### *a. Criminal Proceedings*

In April 2022, Smith-Johnson was charged with possessing a firearm as a felon in violation of 18 U.S.C. § 922(g)(1) and with unlawfully possessing a machinegun in violation of 18 U.S.C. § 922(o). *See United States v. Smith-Johnson*, No. 3:22-30045-NJR (S.D. Ill.), Doc. 16 ("Criminal Case"). During those proceedings, he was represented by attorney Todd Schultz of the Federal Public Defender's office.

Smith-Johnson elected to plead guilty to both charges with a plea agreement. According to a signed stipulation of facts:

> [A] search of [Smith-Johnson's] residence resulted in the seizure of a Glock 23, .40 caliber pistol, which had an automatic rifle switch and was loaded with 23

> rounds of ammunition. In addition, agents seized a loaded 50-round drum magazine. The defendant was aware the firearm's switch allowed it to shoot automatically, and he knew was prohibited from possessing the firearm a convicted felon. The firearm was manufactured outside of Illinois and traveled in interstate commerce prior to its recovery.

(PSR, Criminal Case, Doc. 36 ¶ 10).

During his plea hearing, the Court reviewed several provisions of the parties' agreement, including their respective sentencing recommendations. As part of the agreement, Smith-Johnson agreed that he would not ask for a sentence of less than 92 months, and the Government stated that it would recommend a total sentence of 120 months. The parties came to these figures based on their preliminary calculation of Smith-Johnson's Sentencing Guidelines range, which suggested that Smith-Johnson's base offense level was 22, under U.S.S.G. § 2K2.1(a)(3), and that an enhancement under § 2K2.1(b)(6)(B) applied because the offense had been committed "in connection with another felony offense (an automatic weapon switch)." (Criminal Case, Doc. 32, p. 4). The Government agreed that Smith-Johnson qualified for a three-point reduction for his acceptance of responsibility, resulting in a base offense level of 23. The parties also agreed that Smith-Johnson was in Criminal History Category VI. Based on these calculations, his anticipated Guideline range was 92-115 months.

The Court made clear to Smith-Johnson that the parties' recommendations were not binding on the Court. (Criminal Case, Doc. 59, p. 13). It also explained that he would still be bound by the plea agreement if the Court calculated a Sentencing Guidelines range that differed from the parties' agreement. (*Id.* at p. 17). After Smith-Johnson stated that he understood, the Court accepted his plea. (*Id.* at p. 21).

Following Smith-Johnson's guilty plea, the Probation Department prepared an initial presentence report ("PSR"); the Department's Guideline calculation matched the parties' anticipated range. (Criminal Case, Doc. 36). Smith-Johnson appeared before the Court for sentencing on January 10, 2023. He confirmed that he had read and discussed the PSR with his attorney and stated that everything in the report was true. (Criminal Case, Doc. 61, p. 3). Mr. Schultz did not object to any aspect of the report. The Court adopted the PSR and sentenced Smith-Johnson to a within-Guidelines prison term of 104 months, followed by three years of supervised release. (Criminal Case, Doc. 45). Smith-Johnson did not appeal. The Court later reduced his prison term to 95 months pursuant to Amendment 821 to the Sentencing Guidelines. (Criminal Case, Doc. 56).

Smith-Johnson now alleges that he received constitutionally deficient assistance from his attorney. Specifically, he asserts that Mr. Schultz erred when he (1) failed to appeal his sentence despite his express request, (2) failed to obtain a plea agreement that "included equitable terms," and (3) failed to challenge the sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B).

On May 7, 2026, the Court issued an order rejecting the first two claims on the merits. (Doc. 20). However, the Court found that a hearing was necessary to resolve the third claim and appointed counsel to represent Smith-Johnson.

*b. Evidentiary Hearing*

The parties appeared before the Court for an evidentiary hearing on September 23, 2026. Attorney Schultz was the sole witness; Smith-Johnson did not testify. Schultz's testimony was uncontradicted, and the Court finds him credible.

Schultz has been an Assistant Federal Public Defender for approximately 18 years. Shortly after he was assigned to represent Smith-Johnson, he prepared a preliminary assessment of the likely Sentencing Guideline range based on the discovery disclosed by the Government. (Gov't Ex. 3). Schultz believed that the "entire case" would turn on the Sentencing Guidelines. From his review of the discovery, he concluded the Government likely could establish (at least by a preponderance of the evidence) that Smith-Johnson used the firearm charged in the indictment in connection with a February 10, 2022 shooting on I-70 in St. Louis, Missouri. This evidence, according to Schultz, included video of Smith-Johnson in a car that matched the shooter's vehicle and ballistics connecting the casings recovered at the scene to Smith-Johnson's firearm.

Based on these facts, Schultz assessed that one of two Guidelines enhancements would apply. The first and "best case scenario" was a four-level enhancement under § 2K2.1(b)(6)(B) because Smith-Johnson possessed the firearm in connection with another felony (likely aggravated battery with a firearm). More concerning, however, was the prospect that the cross-reference at § 2K2.1(c)(1)(A) would apply and that the attempted murder guideline in § 2A2.1 could yield a base offense level of 36 or more. The former scenario, if Smith-Johnson pleaded guilty, would result in a Guideline range below 120 months. The latter could result in a range closer to 240 months. Schultz testified that he explained these scenarios in his conversations with Smith-Johnson.

In an attempt to mitigate Smith-Johnson's sentencing exposure, Schultz asked the Government to dismiss one of the counts. This would effectively take a 240-month sentence off the table because of the 120-month statutory maximum. The Government declined his request.

At some point later, Schultz received an email from the Government that "pleasantly surprised" him. (Gov't Ex. 2). In calculating the applicable Guideline range for a potential plea agreement, the Government stated that the four-level § 2K2.1(b)(6)(B) enhancement would apply *for Smith-Johnson's possession of the machine-gun conversion device* (or "switch") as opposed to some other offense. That suggestion was a "gift" to Smith-Johnson, Schultz testified, because it prevented the February 10, 2022 shooting from taking center stage at sentencing and meant that Smith-Johnson would not have to make any admissions regarding the shooting as a part of the plea agreement.

Schultz explained that the plea agreement (Criminal Case, Doc. 32) got even better from there. The Government agreed to recommend a sentence of 120 months, a concession that stood out to him because of its rarity in this District. In his experience, the Government's sentencing recommendations are typically tied to the Guideline Range as determined by the Court and are not a firm number. He had been concerned that the Probation Department might find a greater offense level than the range set out in the Plea Agreement, but the Plea Agreement bound the Government to a lower recommendation.

Ultimately, Schultz did not lodge an objection to the § 2K2.1(b)(6)(B) enhancement at sentencing because he surmised that the Government would counter that the enhancement would apply on another theory. That would have been "disastrous," he said, because it would re-open Smith-Johnson's exposure to the § 2K2.1(c)(1)(A) cross-reference and draw the Court's attention to aggravating facts. He also testified that at the time of sentencing he did not have any reason to think that it was unlawful to apply the § 2K2.1(b)(6)(B) enhancement based on the machine gun conversion device.

Schultz further testified that he did not see any way for Smith-Johnson to avoid the four-point enhancement entirely, based on his review of the discovery. And if Smith-Johnson were re-sentenced, Schultz worried that he might receive a harsher sentence.

## LEGAL STANDARD

Section 2255 of Title 28 of the United States Code provides a federal prisoner with a post-conviction remedy to test the legality of their detention "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). Thus, it "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

## DISCUSSION

Smith-Johnson argues in his motion that Mr. Schultz should have objected to the § 2K2.1(b)(6)(B) enhancement under the Fifth Amendment's Due Process clause, but the core of his argument focuses on whether the enhancement was erroneous on the facts of his case.

The Sixth Amendment guarantees criminal defendants the right to counsel. U.S. Const. amend. VI. And "the right to counsel is the right to the effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). To prevail on an ineffective assistance claim, a petitioner is required to "meet the familiar two-part standard set forth in *Strickland*." *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (citing *Strickland v.*

*Washington*, 466 U.S. 668, 688 (1984)). The petitioner must show that his counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness,'" and his counsel's deficient performance prejudiced him. *Id.* at 532 (quoting *Strickland*, 466 U.S. at 688). In assessing whether an attorney's performance was deficient, a court's review is deferential, and a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound [] strategy." *Pierce v. Vanihel*, 93 F.4th 1036, 1048 (7th Cir. 2024) (quoting *Mosley v. Atchison*, 689 F.3d 838, 847-48 (7th Cir. 2012)). To establish prejudice, there must be a reasonable probability that, but for the deficient performance, the result of the proceeding would be different. *Strickland*, 466 U.S. at 694.

A court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Moreover, where a claim of ineffective assistance fails on one prong, the court need not address the other prong, as the failure to satisfy either prong is fatal to the claim. *See Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

At the time Smith-Johnson was sentenced, § 2K2.1(b)(6)(B) required a four-level enhancement if the defendant:

> used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense[.]

U.S.S.G. § 2K2.1(b)(6)(B) (2021 ed.).

Now codified at § 2K2.1(b)(7)(B), the enhancement applies "when a preponderance of the evidence connects the defendant's use or possession of a firearm to another felony offense, even if the defendant was neither charged for nor convicted of the second crime."

*United States v. Ingram*, 40 F.4th 791, 794 (7th Cir. 2022). This test is "satisfied only when the firearm 'had some purpose or effect in relation to' another felony." *Id.* (quoting *United States v. LePag*e, 477 F.3d 485, 489 (7th Cir. 2007)).

For its part, the Sentencing Commission says the enhancement is appropriate "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense . . . ." U.S. Sent'g Guidelines Manual § 2K2.1 cmt. n. 14(A) (U.S. Sent'g Comm'n 2021). "[A]nother felony offense," in turn, is defined as "any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." *Id.* App. N. 14(C). The Seventh Circuit has held that this definition excludes "the possession or trafficking offense that serves as the basis for the defendant's conviction." *United States v. Jackson*, 741 F.3d 861, 863 (7th Cir. 2014) (citing *United States v. Juarez*, 626 F.3d 246, 255 (5th Cir. 2010)).

Here, the PSR and Plea Agreement both stated that the "other" offense supporting the enhancement was Smith-Johnson's possession of a firearm equipped with an automatic weapon switch. (Criminal Case, Doc. 36 ¶ 25; Doc. 32, p. 4). But as noted above, the enhancement applies only if the firearm *facilitated another* felony offense. The Court computed Smith-Johnson's Guideline range based on his conviction under § 922(o) for possessing a machinegun. (Criminal Case, Doc. 36 ¶ 24). *That conviction* was not "another" felony offense that would justify the enhancement. The Guidelines' commentary emphasizes that the other offense cannot be "*the* explosive or firearms possession or trafficking offense." U.S. Sent'g Guidelines Manual § 2K2.1 App. N. 14(A) (U.S. Sent'g Comm'n 2021) (emphasis added). Nor is the Court convinced that calculating the Guidelines based on Smith-Johnson's separate

§ 922(g)(1) conviction makes a difference. The two counts were grouped at sentencing, and the Guidelines already accounted for Smith-Johnson's possession of a machinegun because he was subject to the heightened offense level under § 2K2.1(a)(3) for possessing a semiautomatic firearm with an attached large capacity magazine subsequent to a conviction for a crime of violence. That aside, it makes little sense to say that Smith-Johnson's firearm—a Glock 23, 40 caliber pistol—"facilitated" his possession of the very same firearm equipped with a machinegun conversion device. *See United States v. Hill*, 563 F.3d 572, 581 (7th Cir. 2009) (explaining that "the relevant question is not whether the two offenses occur simultaneously or have some causal relationship with one another, but whether they are based on the same conduct"). Thus, the Court concludes that Smith-Johnson is correct that the enhancement should not have been applied based on his possession of the switch.

However, that does not mean he is entitled to relief. For one, he has not demonstrated that attorney Schultz performed deficiently by failing to object to the enhancement. It is, of course, the case that "[a]n attorney's failure to object to an error in the court's guidelines calculation that results in a longer sentence for the defendant can demonstrate constitutionally ineffective performance." *Ramirez v. United States*, 799 F.3d 845, 855 (7th Cir. 2015). Schultz's failure to object to the enhancement, however, was not an error that resulted in a longer sentence for Smith-Johnson. Instead, it was a strategic choice meant to help him avoid a *lengthier* prison term. *See Harris v. United States*, 366 F.3d 593, 596 (7th Cir. 2004) (holding that an attorney's performance was not objectively unreasonable where his failure to advance an argument was based on his strategic assessment that the effort might hinder his client's ability to obtain a lower sentence).

Schultz testified that the Government's decision, in the plea agreement, to link the enhancement to the switch was a "gift" to Smith-Johnson. Based on his review of the discovery materials, he was confident that the § 2K2.1(b)(6) enhancement would apply—most likely because the Government could connect the firearm to an aggravated battery. In fact, Schultz was so persuaded by the strength of the Government's evidence that he believed the only chance the enhancement *would not* apply was if the Court opted for the cross reference to the attempted murder guideline, which would have resulted in a far higher guideline range. The Government's choice to tie the enhancement to the switch, rather than Smith-Johnson's use of the firearm, kept that issue from taking center-stage at sentencing. Had Schultz objected to the enhancement, the Government easily could have put on damaging evidence regarding the February 10, 2022 shooting.

Additionally, an objection might have amounted to a breach of Smith-Johnson's plea agreement, putting at risk the Government's commitment to "recommend a total sentence of 120 months"—a concession that Schultz described as unusual in this District compared to its typical Guideline-driven recommendations. The Court finds that Schultz's representation did not fall below an "objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In fact, the Court believes that Schultz helped Smith-Johnson obtain a highly favorable (and likely the best possible) outcome under the circumstances.

For similar reasons, Smith-Johnson has not demonstrated that he was prejudiced. Had Schultz had objected to the enhancement on the grounds described above, the Government would have introduced evidence tying Smith-Johnson to the February 10, 2022 shooting, which would have resulted in the same—if not higher—Guideline range. Schultz testified that he viewed the Government's evidence as sufficient to prove that Smith-Johnson had

actual possession of the firearm at the February 10 shooting by a preponderance of the evidence. Smith-Johnson, for his part, has not put forward any evidence calling into question the strength of the Government's evidence. And because he has not established any likelihood that he would be sentenced more favorably, he has not demonstrated prejudice. Accordingly, his ineffective assistance claim is without merit.

## CONCLUSION

For these reasons and for the reasons stated in the Court's prior order (Doc. 20), Smith-Johnson's motion to vacate, set aside, or correct his sentence (Doc. 1) pursuant to 28 U.S.C. § 2255 is **DENIED**. This civil action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly. The Court expresses its thanks to Attorney Cira R. Duffe for assisting Smith-Johnson in this matter.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires district courts to consider whether to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, a petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)) (emphasis omitted).

Here, reasonable jurists would not debate that all of Smith-Johnson's ineffective assistance claims are meritless. Accordingly, a certificate of appealability is denied.

## NOTICE OF APPELLATE RIGHTS

If Smith-Johnson wishes to contest this Order, he has two options. He may seek review of the Order by the Seventh Circuit or request that the undersigned reconsider the Order before going to the Seventh Circuit. If Smith-Johnson chooses to go straight to the Seventh Circuit, he will only be allowed to proceed on his appeal if he first obtains a certificate of appealability. The undersigned District Judge has already declined to issue a certificate of appealability. So, Smith-Johnson must request a certificate of appealability from the Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and 28 U.S.C. § 2253(c). He must also file a notice of appeal within 30 days from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Smith-Johnson files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C); *see also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807-08 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Smith-Johnson cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Smith-Johnson plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Smith-Johnson wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within 28 days of the entry of judgment, and the deadline *cannot* be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010); *see also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), & (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day window or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Smith-Johnson showing excusable neglect or good cause.

**IT IS SO ORDERED.**

**DATED: October 2, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**